Good morning. In this matter, Your Honor, the evidence is pretty clear that the officers used excessive force and there was an unreasonable seizure. Under Graham, there's three factors that the court typically looks to, and in this case, all three of those factors clearly show that the seizure was unreasonable. First, there was the officer who initially contacted Mr. Fuller indicates that Mr. Fuller was no threat. That's one of the factors. Another factor in Graham is the severity of the crime. In this case, not only, according to the officer, was there no crime, but the circumstances for which he was arrested, failure to give identification, was not a crime. I thought he was arrested for kicking on the door of the police department, which would be disturbing the peace or some other type of crime. It's not just for failure to give identification? Well, no. That's why the officer approached him. He kicked the door. He did not disturb the peace, and he was not malicious. He simply kicked the door. What was he arrested for? He was not arrested for – well, the arrest was for failure to produce an ID. Officer Smith asked Mr. Fuller for his identification, and Mr. Fuller did not respond, as he was not responding to any of the requests of the officer. You know, the Supreme Court in, I think it's Alford is the name of the case, reversed the Ninth Circuit decision where the Ninth Circuit had said there wasn't cause to arrest for violating Washington privacy statute, but that the Ninth Circuit had to consider if there was probable cause to arrest for any offense. Well, it – If it wasn't proper to arrest for not giving identification, I think that Supreme Court case might mean that there's probable cause to support the arrest if they could have arrested him for kicking the door. Well, they could not have arrested him. I know the case was Alford v. Hainer when we had it. It may have been flipped around the name when it went up on a separate petition. Correct. And it was reversed, and they wanted to make a determination as to whether or not the person could be arrested for falsely impersonating a police officer. In this case, the kicking of the door is not a crime. The defense has suggested that maybe it's malicious mischief, but that it wouldn't fall within that. Yeah, it was a little bit more than just kicking the door. I mean, the bottom line is he was kicking the door. He asked him to stop kicking the door. He continued kicking the door. Asked him to stop kicking the door. He continued kicking the door. He asked him to leave. He sort of backed off. Then he went back. He was behaving very bizarrely. He looked bizarre as if he was on some kind of controlled substance, whether it was just alcohol or a drug. But he looked that way, and he refused to back off. So you have to add all that up and ask whether that gave the officer reasonable cause to arrest under whatever, Penal Code 647. Well, he did not. Well, he's not required to leave. He was not obstructing the street. And so the officer. Maybe he just chose a bad door to kick. It was the police door. Could he just keep kicking the door all night without anybody stopping him? In other words, if he didn't want to stop, could the police not arrest him if he kept kicking the door of the police station all night? Well, if it interfered with the operation there, and apparently if there was some, if he had interfered with, if he was interfering with something, then they may have a grounds to arrest him. But that's not why they arrested him. They arrested him because he didn't have identification. Well, I'm accepting your statement on that as to what their motivation was subjectively. Right. And I think the Supreme Court case that I mentioned probably requires us to ask did they have grounds to arrest him for anything? Correct. And the officer knows that he thought he was intoxicated but able to take care of himself, and therefore he didn't arrest him for that. So there is the issue of the false arrest. But in addition to that, under Graham, if that is the crime, it is a very minor, almost nonexistent one for which the use of force would not be justified. The force, I understand one element of the force is they used like an arm lock in putting handcuffs on him. Another element is just that they're going to handcuff him. And another element is that relates to the tragic circumstances of his death is they didn't administer CPR themselves, although they had called the EMTs, right? What is the force that you claim is excessive? The first force that was used that was excessive was the control hold, the two-hand bent wrist hold. Officer Smith claims that he was attempting to handcuff him, and that process was unreasonable because Mr. Fullert, as indicated in the record, wasn't responding. So the officer took one hand and put it behind his back. Then the officer took that hand and put him in a two-hand bent wrist control hold and just held him like this with his handcuffs still in his case. He continued to hold him like this and then demanded that he put his right hand behind his back. But Mr. Fullert couldn't respond. He wasn't responding. And as the officer repeatedly asked him to put his hand back and continue to hold him in this grip, which can cause pain, Mr. Fullert then turned, and that's when the officer then increased, escalated his use of force. There's no ‑‑ the officer offers no explanation why he simply just take out the handcuffs and handcuff him. Instead, he grabs him by one hand and demands repeatedly four times that he put his other hand behind his back when he can. And then when Mr. Fullert, because of the pain, and the officer notes that this hold does and can cause pain, once he moves, then the officer further accelerates and increases the use of force. And that's when they throw him to the ground. And once he's on the ground, they pin his chest to the ground, which makes it difficult for him to breathe and leads to his death. So the officer's conduct was unreasonable, both in terms of not employing the correct hold, i.e., they should have just handcuffed him. Instead, they had him in a control hold from which you cannot handcuff a person. And at this time, I have a minute left, a minute and a half, if I'd like to reserve that for you, Your Honor. May it please the Court. Good morning, Your Honors. I'm Rob Bonta, Deputy City Attorney with the City and County of San Francisco, and I'm here on behalf of defendants. I think Your Honors have it spot on on the issue of false arrests. There were numerous violations and offenses that Mr. Fullert could have been arrested for, including disturbing the peace, vandalism, disorderly conduct, and being under the influence of a controlled substance. And I'm glad Your Honor points out the Devenpeck v. Alford case, because that's right on point as well. The subjective reason, whatever was in the mind of Officer Smith at the time for arresting Mr. Fullert, is really irrelevant. Let's get to the force issue then. Sure. Let's assume that there's ground to arrest him for, without having decided it, but assuming we decide there's grounds to arrest him for something, you know, just disturbing the peace or whatever, what about the level of force that was applied in putting that arm grip on him to get the handcuffs on? I guess it's a summary judgment, right? So we have to take the facts as given most favorably, with all inferences, most favorably to the appellant. So how does your client view the force level? Well, frankly, the undisputed evidence in the case reflects a minimal use of force at all turns, at all steps in the process. Mr. Officer Smith gently guided Mr. Fullert away from the Sally Port door. He then decided it was appropriate to return. He used verbal commands whenever possible. Interestingly, Mr. Haynes believes that not enough force was used and he shouldn't have used verbal commands. Instead, he should have simply grabbed his wrist. We believe that using a continuum is appropriate, first using verbal commands if they don't work, then using the next degree of force. That was used here. Mr. Officer Smith took Mr. Fullert's arm and put it in a control hold that's widely used by law enforcement for the safety and the safety of Mr. Fullert. He then requested that he put his right arm behind his back. Mr. Fullert didn't comply with that request. Then, unfortunately, Mr. Fullert decided to try to break out of the hold, to turn and spin towards Officer Smith, which is a very dangerous position to be in. Officer Smith then used a reasonable degree of force by using the arm bar takedown to take Mr. Fullert to the ground. His feet hit first. He continued to struggle on the ground, Mr. Fullert did, which is interesting. It shows that the idea suggested by appellant's counsel that he was in pain and that's why he turned to his left doesn't quite make sense because he continued to resist, shaking his body, kicking his legs while on the ground. Officer Smith requested the assistance of other officers as quickly as they could. Within a minute, they got handcuffs on and then they put him into a position of recovery on his side, which is an appropriate position. They immediately called medical response, which the law demonstrates is the appropriate thing to do, and then monitored him carefully, diligently, and faithfully by listening to his breathing, watching his chest movements, checking his pulse until the ambulance arrived. So at every occasion when force had to be used because of what Mr. Fullert decided to do, it was appropriate. It was minimal, we believe, and it doesn't have to be minimal, but we believe it was. Isn't there one witness who says he was on his stomach when he arrived? There is a reference to that in the record. I think it was that he was on his back when he arrived. Now, I know the police officers testify differently, but is that a disputed fact? No, I don't believe it is and I don't believe it's relevant. The undisputed fact is that for the time that the officers were with Mr. Fullert and monitoring him, he was on his side. Things could have changed later. The Judge Armstrong below recognized that he may have rolled onto his back and didn't find that relevant or a material disputed fact. Who knows what happened during the changeover process when the paramedics were arriving and the officers went out to greet them. But the undisputed evidence shows that while the officers were with him and had a responsibility to monitor Mr. Fullert, he was on his side. If I'm recalling this record right, the district court thought there was excessive force if you view the facts favorably to the appellant on the issue of not administering, the police not themselves administering CPR, but said there would be qualified immunity on that? I think that's mostly right. I think she found that a reasonable jury could find. I don't think she did find, but she found that a reasonable jury could find. The facts would be sufficient to permit a jury to find that? Yes. And only on the element of omission to give CPR themselves? That's correct, only on that one specific element. And that's where the qualified immunity kicks in very clearly. I don't believe she got it quite right on that issue, to be honest, because there's no duty to give CPR as long as you're breathing. And the monitoring and Officer Smith's testimony shows that Mr. Fullert was breathing the entire time he was with him, so it wouldn't make sense to give CPR. But that aside, there's a clear qualified immunity defense here. It's not clearly established that there's a duty to give CPR. The only thing that is established is that an officer promptly summoned aid, and that was done here. The paramedics were called, and they even – the ambulance and transport. And what was the evidence as to when the officers realized he wasn't breathing? They never realized that. They never did. So it's the emergency medical technicians get there and find he's not breathing at that point? It's unclear exactly when they find it, but sometime after their arrival is when it's determined that he's not breathing. And they made efforts to resuscitate him. It's interesting because that issue is, I think, on all fours with the estate of Phillips case, in which there was careful monitoring by the police. Unfortunately and tragically, just like here, the suspect died, but the court found that it would be speculation to believe that there was anything less than appropriate monitoring and that the officer should have known that he'd stopped breathing. Thank you. Thank you. Mr. Haines? I would note, Your Honor, there is a question, in fact, as to – that's disputed, that the court resolved in favor of the defendant, and that is that Mr. Fullard had one handcuff on him when he spanned out of control. That's a disputed fact. He had no handcuffs on him at any time while he was standing. And at page – Who was disputing that fact? The plaintiff. No, but who was your witness? The officer. And also, it's not disputed by the defendant. The court simply, in its evaluation, stated that he was handcuffed. In the pleadings of the defendant, they state that, but in their statement of facts, it's clear that he was not handcuffed. And at page – exhibit F, page 3, you see the two-hand bent wrist hole, which is not designed to handcuff a person. In the photograph, the person was already handcuffed. Mr. Fullard was not. So this control hole was used to handcuff Mr. Fullard when this control hole is specifically not designed to do that. Thus, he was attempting to do that which he couldn't do, which led to the unreasonable use of force. Thank you. Okay, thank you, counsel. The matter just argued will be submitted.
judges: Noonan, Rymer, Gould